IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL ROMANO, JR. | : | NO. 06-573-JJF |
|       Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| STAN TAYLOR, ET. AL. | : | |
|       Defendant | : | JURY TRIAL DEMANDED |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) OF DEFENDANTS TOLSON, GILBERT, WASHINGTON, AND HICKS**

    Defendants Lisa Tolson, Reginald "Reggie" Gilbert, Curtis Washington, Chelsea Hicks (hereinafter "Moving Defendants") by and through their undersigned counsel, hereby respectfully requests that this Honorable Court enter an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing with prejudice all claims against the Defendants. In support of their Motion to Dismiss, Defendants have filed simultaneously herewith a Memorandum of Points and Authorities demonstrating the requested relief and incorporate said Memorandum.

    **WHEREFORE**, the Defendants Tolson, Gilbert, Washington, and Hicks respectfully request that this Honorable Court enter an Order dismissing Plaintiff's claim against Defendants with prejudice.

Dated: December 21, 2006      By: /s/ Michael L. Ripple
                                                   Michael L. Ripple, I.D. #3993
                                                   REGER RIZZO KAVULICH DARNALL
                                                   1001 N. Jefferson Street, Suite 202
                                                   Wilmington, DE 19801
                                                   (302)652-3611

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL ROMANO, JR. | : | NO. 06-573-JJF |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| STAN TAYLOR, ET. AL. | : | |
| Defendant | : | JURY TRIAL DEMANDED |

MEMORANDUM OF LAW AND POINTS AND AUTHORITIES IN SUPPORT MOTION TO DISMISS PURSUANT TO RULE 12 (b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE OF DEFENDANTS TOLSON, GILBERT, WASHINGTON, AND HICKS

Defendants Lisa Tolson, Reginald "Reggie" Gilbert, Curtis Washington, and Chelsea Hicks (collectively "Moving Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law and Points and Authorities in support of their Motion to Dismiss.

I.  **INTRODUCTION**

This is a *pro se* inmate case in which inmate Paul Romano ("Romano"), presently incarcerated at Sussex Community Correctional Center, brings constitutional claims against Moving Defendants based on his stay at the Crest Program ("Crest Program")[1]. Specifically, Romano alleges that he was wrongfully detained at different institutional levels in a manner which ultimately prolonged his incarceration.

Because Romano did not exhaust his administrative remedies and the Moving Defendants were not sufficiently involved in the alleged constitutional deprivations to

---

[1] The Crest Program is administered by Civigenics, Inc., a private entity. Moving Defendants are employees of Civigenics, Inc.

trigger liability under 42 U.S.C. § 1983 *et seq.*, Romano's claims against Moving Defendants must be dismissed as a matter of law.

II.  **STATEMENT OF FACTS**[2]

    A.  **Romano's Allegations**

Romano has alleged that on April 30, 2006, Defendant Washington scheduled him for an appointment with Counselor Williams with the Department of Probation and Parole. During this meeting, Ms. Williams informed Romano that his Level III sentence was revoked. According to Romano, the sentencing order on Ms. Williams' computer screen indicated that he was released to Level III. He claims to have then confronted Ms. Williams with this information and she stated, "That is water under the bridge now."

Thereafter, Romano decided to attend Civigenics for twelve (12) weeks while awaiting release to Level IV at the Crest Program. The Crest Program is located at the Plummer Center, a separate facility for the Department of Correction in Wilmington, Delaware. Apparently, there is a long waiting period for acceptance into this center. On June 13, 2006, Romano alleges to have passed the "last test" needed to be released to the streets; however, he was sanctioned for a basic rule infraction for disrespecting a counselor on the same date. On June 14, 2006, Romano was sanctioned by this counselor and directed to offer a public apology, perform two (2) hours of community service, and one (1) week of growth meetings conducted in both the morning and evening. Romano believed that these sanctions ended the matter.

---

[2] Defendants present these facts solely for purposes of the Motion to Dismiss, as this Court "must accept as true all facts alleged in the complaint and any reasonable inferences that can be drawn from them." Brown v. Montgomery County, No. 04-5729, 2005 U.S. Dist. LEXIS 10335 at *2(E.D. Pa. May 26, 2005).

On June 16, 2006, Romano's infraction was brought to the attention of his Peer Accountability Group. During the Peer Accountability Group, Romano received feedback from the group for forty-five (45) minutes regarding his infraction, during which time he was disrespected and called names. At the end of the meeting, Defendant Hicks informed Romano that "he was not anything, that she goes home at night and drives an Explorer with 20 inch rims." Subsequently, Defendant Gilbert asked Romano if what he stated was true. Romano informed that it was. Defendant Gilbert then placed Romano in Pod No. 1.

On June 23, 2006, the Multidisciplinary Team ("MDT") sentenced Romano to two (2) weeks on the MERTO for disrespecting a counselor. Romano alleges to have remained on Pod No. 1 for twenty-one (21) days. Romano was then transferred to Pod No. 2 for two (2) weeks until he re-entered the Crest Program.

On August 7, 2006, Romano signed out of Civigenics. At that time, the MDT offered him the options of either entering Civigenics for sixty (60) days before his name went on a list for Plummer Center or receive a sixty (60) day sanction for signing out. At that time, Romano indicated that he would file a grievance for failure of due process for contempt to follow a court order. There is no allegation that he did so.

With respect to the grievances, Romano alleges to have spoken with Defendant Washington, Tolan, Gilbert and Hicks of the Crest Program. In addition, he also spoke with Counselor Williams of the Department of Probation and Parole. Romano alleges that he was passed from one individual to another.

**B.    Grievance Procedure**

Civigenics has in place a procedure for handling grievances and/or complaints of inmates enrolled in their treatment programs. To ensure that all inmates are aware of the proper procedure to resolve complaints, each inmate is provided with a copy of the "Complaint Resolution Form" when they are first enrolled in the program. Upon review of the procedure, the inmate signs the form acknowledging that he had read the procedure. (See Civigenics Complaint Resolution Form attached as Exhibit "A").

An inmate, however, may elect to either follow the Civigenics' grievance procedure or the grievance procedure of the Delaware Department of Corrections. (See id.). If an inmate elects to follow the Delaware Department of Corrections grievance procedure, that procedure will take precedence over Civigenics' grievance procedure. (See id.). An inmate is notified of the procedure and this policy at the time of the enrollment. Indeed, they are required to file a form which sets forth the grievance procedure. The form signed by the Plaintiff is attached hereto as Exhibit A. (See id.).

With respect to the Civigenics' grievance procedure, the first step is to file a complaint form or letter with the inmate's primary counselor. (See id.). If the inmate does not agree with the result of this review, he or she may then submit the complaint to the clinical supervisor for review and action. If the inmate is still not satisfied, the complaint will be forward to the Program director. Following the program director's review, if the inmate still does not believe the issue is resolved, the complaint will be reviewed by the Office of the State Director. Upon review of the State Director, if the issue is still unresolved the complaint will be reviewed by the Region 1 Director.

The Delaware Bureau of Prisons' grievance procedure requires that an inmate first file a grievance form with the Grievance Chairperson within in 7 days of the incident complained of. (See State of Delaware, Bureau of Prisons, Procedure 4.4, Inmate Grievance Procedure, dated 05/15/98, attached hereto as Exhibit "B"). The grievance will be reviewed and an informal resolution will be attempted. (See id.). If an informal resolution is not met, then the grievance will be heard by the Resident Grievance Committee who will review the grievance, investigate if warranted, and take testimony. The Resident Grievance Committee will then issue its recommendations to the Warden. (See id.) The Warden will then issue a decision. (See id.). If an inmate does not concur with the Warden's decision, he or she may appeal the Warden's decision to Bureau Grievance Officer, whose decision is final. (See id.).

### III.   ARGUMENT

#### A.   Standard On A Motion To Dismiss

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all allegations set forth in the complaint and all reasonable inferences that can be drawn therefrom, and must view them in the light most favorable to the non-moving party. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977); Brown v. Montgomery County, No. 04-5729, 2005 U.S. Dist. LEXIS 10335, at 2-3 (E.D. Pa. May 26, 2005) (Hutton, J.). While a court should accept as true all well-pleaded allegations of the complaint, it should not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Carr v. Sharp, 454 F.2d 271, 273 (3d Cir. 1972).

Federal Rule of Civil Procedure 12(b)(6) states that a Motion to Dismiss made pursuant to the rule may also be treated as a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and matters outside the pleading may be presented.

**A. Plaintiff's Complaint Must Be Dismissed As He Failed To Exhaust His Administrative Remedies**

Pursuant to the Prisoner Litigation Reform Act of 1995, prisoners must exhaust "such administrative remedies as are available" before bringing actions "with respect to their prison conditions." 42 U.S.C. Section 1997e(d)(2). In an opinion authored by Justice Ginsburg, the United States Supreme Court held that this exhaustion requirement applies to all inmate suits seeking redress for prison circumstances or occurrences, whether the suits involved general circumstances or particular episodes, and whether the suits alleged excessive force, actual physical prison conditions, or some other alleged wrongdoing. Correction Officer Porter, et. al. v. Nussle, 534 U.S. 516 (2002). This exhaustion requirement is mandatory. Id. Moreover, *exhaustion* of administrative remedies means completing all available appeals, even if prison officials do not respond. Davis v. Warman, et. al., 49 Fed. Appx. 365, 366 (3d Cir. 2002); Brown v. Morgan, F.3d 595, 596 (6th Cir. 2000).

Here, Civigenics had a procedure in place to address complaints of inmates enrolled in their treatment programs. (See Ex. A). Romano was aware of the Civigenic's grievance procedure. Indeed, Romano executed a form reflecting that he had read the procedures. (See id.). Despite being aware of the proper procedure for filing a grievance, Romano merely complained to various counselors. He made no attempt to adhere to the grievance proceed. Other than complaining to various counselors, he made no other

attempts to have his complaints resolved. Instead, Romano filed a lawsuit and performed the exact action which the P.L.R.A. prohibits.

Thus, because Romano has not exhausted his administrative remedies as mandated by the P.R.L.A., his claims must be dismissed.

**B. Plaintiff Cannot Establish That Defendants Tolson, Gilbert, Washington, Or Hicks Were Sufficiently Personally Involved In Their Alleged Constitutional Violations To Be Held Liable Under Section 1983.**

In order to prevail on a Section 1983 claim, a plaintiff "must show that the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right." Gruenke v. Seip, 225 f.3d 290, 298 (3d Cir. 2000). An individual, then, can only be held liable under Section 1983 if he or she was personally involved, either through participation, direction or actual knowledge and acquiescence. See Hutchins v. Borough of Lansdale, No. 96-674, 1996 U.S. Dist. LEXIS 7137, at * 10-11(E.D. Pa. May 22, 1996).

Here, Romano merely alleges that he spoke with Defendants Tolson, Gilbert, Washington and Hicks regarding his complaints. Romano acknowledges that these individuals then referred him to others. Significantly, Romano never submitted a written grievance and/or complaint to any of these individuals or their supervisors as required by the grievance procedure. As such, Romano has failed to indicate any cognizable constitutional violation.

Because the alleged involvement of Defendants Tolson, Gilbert, Washington and Hicks in Romano's alleged constitutional violation is not sufficient enough to find liability under Section 1983, Romano's claims against Defendants Tolson, Gilbert, Washington and Hicks must be dismissed.

## III.   CONCLUSION

For all the foregoing reasons, Romano's claims against Tolson, Gilbert, Washington and Hicks must be dismissed with prejudice.


Date:                                   By: /s/ Carla P. Maresca
                                            Carla P. Maresca, Esquire
                                            I.D. No. 77568
                                            Deasey, Mahoney & Bender, Ltd.
                                            1800 John F. Kennedy Boulevard
                                            Suite 1300
                                            Philadelphia, PA 19103
                                            215-587-9400 (PHONE)
                                            215-587-9456 (FAX)
                                            cpmaresca@dmpphila.com
                                            Attorney for Defendants, Tolson, Gilbert, Washington and Hicks

                                          By: /s/ Michael L. Ripple
                                            Michael L. Ripple, I.D. #3993
                                            REGER RIZZO KAVULICH DARNALL
                                            1001 N. Jefferson Street, Suite 202
                                            Wilmington, DE 19801
                                            (302)652-3611

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **PAUL ROMANO, JR.** | : | NO. 06-573-JJF |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **STAN TAYLOR, ET. AL.** | : | |
| **Defendant** | : | **JURY TRIAL DEMANDED** |

## ORDER

AND NOW, this _____ day of _____, 2007, it is hereby ORDERED and DECREED that the Motion to Dismiss by Defendants Lisa Tolson, Reginald "Reggie" Gilbert, Curtis Washington, and Chelsea Hicks in the above-captioned matter having been duly considered and any response thereto, it is hereby ORDERED that the Motion to Dismiss is GRANTED and that judgment is hereby entered in favor of the Defendants and against Plaintiff.

_____
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **PAUL ROMANO, JR.,** | : | CIVIL ACTION NO. 06-573  JJF |
| | : | |
| Plaintiff | : | |
| v. | : | |
| **STAN TAYLOR *ET AL*,** | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Michael L. Ripple, Esquire, do hereby certify that copies of the foregoing Motion to Dismiss were served by First Class Mail, postage prepaid on the following Pro se Plaintiff on December 21, 2006:

Paul Romano, Jr.
1301 E. 12th
Wilmington, DE 19807
Pro Se

        REGER RIZZO KAVULICH &
        DARNALL, LLP


        /s/ Michael L. Ripple
        MICHAEL L. RIPPLE, ESQUIRE
        I.D. No.  3993
        1001 Jefferson Street, Suite 202
        Wilmington, DE 19801
        (302)652-3611
        Attorney for Defendants Tolson, Gilbert,
        Washington and Hicks



Civigenics – Delaware Key/Crest/Aftercare Programs

## Complaint Resolution Form

CiviGenics, Inc.

| PAul Romano | Please Print out Name of Client who will sign below: |

The policy of the Civigenics is to attempt to resolve all client grievances/complaints in a procedure that corresponds with the Department of Corrections Grievance Procedures. Please recognize that if an offender chooses to submit formal grievances per the DOC procedure, this policy takes precedence over the procedure noted below and any result will be determined by the Warden or his delegate (DOC Grievance Officer).

If the offender chooses to use the Civigenics procedure in handling inmate complaints then this is noted below:

All clients are permitted and encouraged to write to their Primary Counselor to address their concerns that are not resolved through the Therapeutic Community process.

IN THE CASE OF UNRESOLVED ISSUES, PROGRAM CLIENTS MAY FILE A COMPLAINT FORM WHICH WILL BE REVIEWED:

1. A complaint form or letter is completed and submitted to the Primary Counselor for review/resolution.

2. If the complaint is not resolved to the client's satisfaction, the complaint can be reviewed by the Clinical Supervisor.

3. Upon review and response by the Clinical Supervisor and the client still does not believe that issue is resolved, the complaint can be forwarded to the Program Director.

4. If a resolution is not met at this level, the complaint will be reviewed at the Office of the State Director for review and resolution. The Warden of the Institution will be notified of the client's complaint and the State Director's ruling. Address of the Civigenics State Director is as follows – Statewide Director, Civigenics, MCCC, 300 Water Street, Dover, DE 19904.

5. Final ruling of complaints will be in coordination of the Region 1 Director. The State Office will notify the Regional Director of any/all complaints considered unresolved.

| Client Signature | Date | Witness | Date |
|---|---|---|---|
| [signature] | 4/20/06 | C Washington Caslor | 4/20/06 |

Updated 7/26/2004 – DE State Office

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1 OF 7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: | |
| PROCEDURE MANUAL | 36 | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS *[signed] Carl W. Howard* | | |
| EFFECTIVE DATE: *Revised 5/15/98* | | |

I.  AUTHORITY: DOC Policy 4.4

II. PURPOSE:

   To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system. Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed. NOTE: Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III. APPLICABILITY:

   All BOP employees, volunteers, persons or organizations conducting business with the BOP; all inmates under BOP custody or supervision.

IV. DEFINITIONS:

   A. Bureau Grievance Officer (BGO): A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

   B. ~~Emergency Grievance: An issue that concerns matters~~ which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

   C. Grievance: A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

A-382

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 2 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

D. Inmate Grievance Chair (IGC): An institutional employee designated to handle inmate grievances.

E. Inmate Grievance Procedure (IGP): The formal process provided to inmates to resolve disputes.

F. Outside Reviewer: An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H. Resident Grievance Committee (RGC): A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I. Reprisal: Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J. Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

    Health Services Administrator
    Director of Nursing
    Charge Nurse
    Chief Medical Officer
    Medical Records Clerk
    Mental Health Counselor
    Chief Dental Officer
    Dental Assistant

V. PROCEDURE:

1. Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2. All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP. Inmate complaints regarding policies and conditions must be within DOC jurisdiction. This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally. NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

A-383

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

A.384

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC*Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

A. 386

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 6 OF 7 |
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

recommendation. Decisions by the Bureau Chief of Prisons are final and not open to grievant interpretation. The Bureau Chief of Prisons will return his final decision and the grievance file to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee. A copy of the grievance shall be sent to the IGC upon receipt by the Warden/Warden's Designee. And the Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will be decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance does not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.4 | PAGE:<br>7 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

A.388