# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL ROMANO, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.06-573-JJF |
| v. | ) | |
| | ) | Trial Jury Demanded |
| COUNSELOR NFN TOLSON, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DOREEN WILLIAMS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b) (6).

### RELEVANT FACTS AND PROCEDURAL HISTORY

1.      Paul Romano, Jr., (Plaintiff), is an inmate incarcerated within the State of Delaware Department of Correction ("DOC") at the Plummer Community Correctional Center (PCCC) in Wilmington, Delaware.

2.      On or about September 23, 2006  plaintiff's complaint was filed with the Federal District Court for the District of Delaware against the State of Delaware and its' Department of Corrections prison officials, as well as Deputy Attorney General Danberg .  (D.I. 2).  On or about October 20, 2006, the claims against prison officials, defendants Taylor, Bianco, Hutchins, George, Edel, Sikora, Records, May, and Grinstead were dismissed without prejudice. In addition, all claims against Attorney General Danberg were dismissed. Also plaintiff's claims for personal property and lost wages were dismissed without prejudice; however, process was ordered served upon defendants Tolson, Williams, Gilbert, Washington and Hicks. (D.I.7).On or

about November 7, 2006, a waiver of service was returned executed as to defendant Williams. (D.I.12).

3.      On or about December 19, 2006, counsel entered an appearance for defendant Williams. (D.I.15). Defendant William's has filed a Rule 12 (b) (6) motion concurrently herewith. (D.I. 18 ). This is a Memorandum of points and authorities in support of defendant Doreen Williams's Motion to Dismiss.

4.      The plaintiff brings this suit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment constitutional violation for the wrongful detention outside the period of compulsory incarceration. (Complaint, *passim*).  Plaintiff alleges that Defendants have failed to act in accordance with the sentenced imposed on Thursday, April 13, 2006 by the Delaware Superior Court. *Id.*  According to the plaintiff, he was sentenced to two years at Level V, suspended after 14 days to Level III upon completion of the Crest program, with 18 months Level II aftercare to follow. *Id.*[1] After sentencing on the violation, Plaintiff was returned to the Sussex Community Correction Center ("SCCC") for further custody and supervision as ordered by the Court.

5.       On or about April 18, 2006, following the extended Easter Holiday weekend, Plaintiff was transferred to the Central Violation of Probation Center ("CVOP") to begin his enrollment in Phase A of the Crest Program. *See* Affidavit of Doreen Williams attached as Exhibit B. Plaintiff's entire complaint appears to surround the circumstances of his placement in the initial phase of the Crest Program. Not one allegation in plaintiff's complaint identifies or relates to any misconduct by defendant Doreen Williams which contributed to plaintiff's

---

[1] On April 13, 2006, the Honorable Richard R. Cooch found Paul Romano to be in violation of probation on VN0611191301 (Forgery 2nd) and sentenced him, effective March 31, 2006, as follows: The defendant is placed in the custody of the Department of Correction for two years at supervision Level 5, suspended after serving 14 days at supervision Level 5 for the balance to be served at supervision Level 4 Crest. Upon successful completion at supervision Level 4 Crest, balance of sentence is suspended for 18 months at supervision level 3 Crest aftercare; hold at supervision Level 3 until space is available at supervision Level 4 Crest. (Offender Status Sheet, attached as Ex. A).

placement at the CVOP. Moreover, plaintiff does not assert facts that demonstrate that Ms.

Williams was the driving force behind alleged misconduct or that she knew of any misconduct of

others and remained deliberately indifferent. In fact, a review of the plaintiff's sentencing Order

reflects that plaintiff was transferred to the L4 Crest following the Easter weekend when bed

space became available. See <u>Client Location History</u> attached as Exhibit C. By plaintiff's own

admission, space was available on April 18, 2006. (D.I. 2).  Nevertheless, plaintiff makes

unsubstantiated claims that he was being held in violation of the Court Order. However, the

record demonstrates that plaintiff was legally held in the custody of the Department at Level 4

Crest. *See* <u>Affidavit of Doreen Williams</u> attached as Exhibit B. Plaintiff remained at CVOP Crest

until he violated the conditions of the program and was terminated, or he refused to continue

with participation in the program. <u>Id.</u>

**STANDARD OF REVIEW**

      6.     When considering a motion to dismiss pursuant to Rule 12 (b) (6), a court must

accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor

of the plaintiff.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478,

483 (3d Cir. 1998).  "A complaint should be dismissed only if, after accepting as true all of the

facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no

relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.*

The motion can be granted "only if no relief could be granted under any set of facts that could be

proved." *Id.*  However, the court need not adopt conclusory allegations or statements of law. *See*

*Conley v. Gibson*, 355 *U.S.* 41, 45-46 (1957). "Claims may be dismissed pursuant to a Rule 12

(b) (6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to

relief."  The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor,*

*Inc.*, 926 F2d 1406, 1409 (3d Cir. 1991).There are four bases supporting defendant Williams'

argument that no relief can be granted plaintiff from the defendant Williams and that she is

entitled to judgment as a matter of law.  First, plaintiff's claim cannot stand because he has failed

to exhaust his administrative remedies prior to filing the instant civil rights action. Secondly, the

Eleventh Amendment immunizes defendant Doreen Williams from suit in her official capacity

and deprives the District Court of subject matter jurisdiction over plaintiff's claims. Thirdly, the

complaint fails to allege any personal involvement by defendant Williams in the issues raised in

plaintiff's complaint.  Lastly, it appears the plaintiff bases the liability of defendant Williams on

the theory of *respondeat superior* in contradiction to longstanding jurisprudence regarding

supervisory liability under 42 U.S.C. § 1983.  Defendant Williams submits that accepting the

allegations in the complaint as true and drawing all reasonable factual inferences in favor of the

plaintiff, the Court is unable to grant relief under any set of facts that could be proved by the

plaintiff.  Accordingly, defendant Doreen Williams is entitled to dismissal in her favor pursuant

to Federal Rule of Civil Procedure 12 (b) (6).

**PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO 42 U.S.C. 1997e.**

7.    State Defendant contends that dismissal of Plaintiff's claims is appropriate

because he has failed to exhaust his administrative remedies. Prisoners are required to

exhaust all administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. §

1983. *See* Prison Litigation Reform Act (PLRA), 42 U.S.C. Section 1997e.  Indeed, this

action is subject to the exhaustion requirements set forth in §1997e (a) which states in

pertinent part

> No action will be brought with respect to prison conditions
> under section 1983 of this title, or any other federal law, by
> a prisoner confined in any jail, prison or other correctional
> facility until such administrative remedies as are available

are exhausted.

*See also, Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000); *Ahmed v. Sromovski*, 103

F. Supp. 2d 838, 843 (E.D. Pa. 2000) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.

2000)).

8.      The PLRA § 1997e exhaustion requirements are twofold. First, a prisoner

complaint must pertain to conditions of his or her confinement. The Third Circuit Court

of Appeals, interpreting prison conditions as defined in 18 U.S.C. § 3626(g) (2), refers

"to the environment in which prisoners live, the physical conditions of that environment,

and the nature of the services provided therein." *Booth*, 206 F.3d at 294. Plaintiff has

been incarcerated within the Department of Correction since the conditions complained

of arose.

9.      Secondly, prison officials must establish an administrative procedure to

remedy prisoner complaints. The Third Circuit stated in *Jenkins v. Morton,* "[E]xhaustion

promotes judicial efficiency in at least two ways. When an agency has the opportunity to

correct its own errors, a judicial controversy may well be mooted, or at least piecemeal

appeals may be avoided. And, even where a controversy survives administrative review,

exhaustion of the administrative procedure may produce a useful record for subsequent

judicial consideration, especially in a complex or technical factual context." 148 F.3d

257, 259 (3d Cir. 1998) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992).

10.      The State of Delaware Bureau of Prisons has established an Inmate

Grievance Procedure whereby "every inmate will be provided a timely, effective means

of having issues brought to the attention of those who can offer administrative remedies

before court petitions can be filed."  See State of Delaware Bureau of Prisons Procedure

Manual, Procedure Number 4.4, Section II (revised May 15, 1998) attached hereto as Exhibit "D". The procedure establishes a three-step grievance process with two levels of appeal. Id. at § V. In order to exhaust all available administrative remedies, a prisoner must complete all stages of review and participate in the appeals process. Therefore the provisions of § 1997 (e) are applicable to him.

11.    The Department maintains an inmate grievance process which permits prisoners to seek review of the problems they experience during their incarcerated time. This process is designed to provide review and resolution of prisoner grievances. The inmate grievance procedures are made available to every prisoner in the Departments' custody. The inmates are required to file formal grievances and appeals to the Inmate Grievance Chair ("IGC") in addition to informal grievances in order to fully exhaust their administrative remedies.[2] After a written grievance is submitted to the IGC,[3] investigation into the matter will be initiated and informal resolution attempted.  If informal resolution is unsuccessful, the inmate grievance resolution committee ("RGC")[4] will convene and a hearing will be held, culminating in a recommendation which is forwarded to the Warden or his designee ("Warden").  If the Warden and the grievant concur with the RGC recommendation, the IGC closes the file and monitors issues of compliance.  If the parties do not concur, the matter is referred to the Bureau Grievance

_____

[2]"All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP." BOP 4.4 Section V.

[3] The grievance process begins when an inmate files a Form #584 which must be completed within 7 calendar days following the incident and forwarded to the IGC.

[4]The RGC is a committee comprised of institutional security staff, treatment staff, and inmate representatives that hears inmate grievances and makes a recommendation to the Warden/Warden's designee.

Officer ("BGO"), who reviews the file.  If the BGO concurs with the Warden's decision and the Bureau Chief of Prisons accepts the BGO recommendation, the IGC closes the file and monitors compliance.  Alternatively, the BGO can attempt mediation between the grievant and the Warden or recommend outside review of the matter. See Exhibit "A".

12.    The BOP procedure for inmate grievances also provides for an emergency grievance. An emergency grievance is defined as "an issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm." Id. at § IV.  Such emergency grievances are expedited. Its procedure provides in relevant part:

> Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee. A copy of the grievance shall be sent to the Inmate Grievance Chair upon receipt by the Warden/Warden's Designee.  And the Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee's decision will be decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance does not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

Id. at section V.

13.    Although Plaintiff affirms that DOC has an inmate grievance procedure, (D.I. 2), he clearly demonstrates that he did not follow the steps necessary for presenting the facts relating to his complaint in the state prisoner grievance procedure. (D.I.2, part II C.). It is incontrovertible that Plaintiff never grieved the conditions of confinement through the proper channels[5]. In response to the question "what steps did you take"

---

[5] CiviGenics, Inc. has a grievance procedure in place for inmate complaints concerning the treatment

relating to fully exhausting available remedies of his claims, he wrote that he "spoke to [defendants and] was continually passed from one to the other with no answer, just disrespect and blatant un-professionalism." (Id.) For all intents and purposes, Plaintiff contends that filing a grievance would have been futile. However, futility does not excuse the exhaustion requirements under the PLRA. See *Nyhuis v. Reno*, 204 F.3d at 71. "The PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not they provide the relief the inmate says he or she desires in the federal action." *Id.* Plaintiff admits that there is a grievance procedure available. Moreover, there is no dispute that Plaintiff was familiar with the inmate grievance procedures.

14.    In the instant case, Plaintiff cannot show that he exhausted available administrative remedies with regard to his allegations of his conditions of confinement. The Plaintiff did not file, as required at the institutional level, a grievance which described the alleged violations for which he now complains. Clearly, Plaintiff cannot offer genuine evidence to demonstrate that he exhausted available remedies prior to filing this action. It is therefore "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.

**SOVEREIGN IMMUNITY**

15.    The plaintiff's complaint specifically names defendant Doreen Williams as Probation and Parole Officer, claiming that the defendant in her official capacity is liable for any alleged harm that the plaintiff incurred. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity,

programs. *See* CiviGenics Complaint Resolution Form attached as Exhibit E.

commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

16.    The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed*." Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100, (1984)). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe,* 517 U.S. at 44. No such clear intent can be seen in 42 U.S.C. §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 U.S.C. §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 U.S.C. § 1983.

17.    A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the defendant in his official capacity is not a "person" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks

jurisdiction over the defendant Doreen Williams in her official capacity, and defendant is outside

the class of persons subject to liability under 42 U.S.C. § 1983. Accordingly, the plaintiff's

complaint against defendant Doreen Williams should be dismissed based on the Eleventh

Amendment to the United States Constitution.

**PLAINTIFF'S EIGHTH AMENDMENT CLAIM ANALYSIS**

18.    Plaintiff's complaint fails to indicate any personal involvement by the named

defendant, Doreen Williams. In actions brought pursuant to 42 U.S.C. § 1983, an individual

cannot be held liable in the absence of personal involvement or knowing acquiescence of the

alleged deprivation. *Pennsylvania v. Porter,* 659 F.2d 306, 336 (3d Cir. 1981) *cert. denied,* 458

U.S. 1121 (1982). "[T]he officials' misconduct cannot be merely a failure to act. Such officials

must have played an affirmative role in the deprivation of the plaintiffs's rights, i.e., there must

be a causal link between the actions of the responsible officials named and the challenged

misconduct." *Id.* Without identifying how she participated in, personally directed, or acquiesced

in the events which he claims deprived him of constitutional rights, defendant Doreen Williams

cannot be held liable and dismissal is appropriate. *Gay v. Petsock,* 917 F.2d 768, 771 (3d

Cir.1990); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). To show "deliberate

indifference," a plaintiff must demonstrate a sufficiently culpable state of mind on the part of the

defendant. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

19.    Plaintiff's complaint fails to allege any affirmative act or failure to act by

defendant Williams other than her role as probation and parole officer acting as an information

liaison and sentence clarification to offenders. There is no particular allegation that defendant

Williams had any personal direction or actual knowledge or involvement in determining the

terms and conditions of plaintiff's sentence. Accordingly, the plaintiff's complaint naming

Williams as a defendant should be dismissed because the plaintiff fails to allege with particularity any personal involvement by defendant Williams in any misconduct alleged in the complaint.

20.      It appears that plaintiff in his complaint attempts to hold defendant Williams liable based upon her supervisory position as a probation and parole officer with the Department of Correction. In a complaint filed pursuant to 42 U.S.C. § 1983, a supervisory official cannot be held liable under the theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.") The Third Circuit has clearly set forth the standard for establishing liability for supervisory officials. *See Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).  The Court in *Sample* employed the Supreme Court's framework for establishing liability of municipal entities, establishing a similar test for establishing liability of supervisory personnel. *Id.* at 1116-1118; *See also City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *Wilson v. Seiter*, 501 U.S. 294 (1991).  *Sample* states that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' . . . has exhibited deliberate indifference to the plight of the person deprived." *Sample*, 885 F.2d at 1118 (citations omitted).  To successfully plead and establish "deliberate indifference," Plaintiff must prove both an objective and a subjective component.  The subjective component requires a showing that Defendant Williams acted with a culpable state of mind; the objective component requires establishing a serious deprivation which clearly rises to the level of a constitutional right. *Wilson,* 501 U.S. at 298.  Moreover, defendant Doreen Williams cannot be held liable on the basis of a failure to adequately supervise or control the conduct of subordinates.  *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986),

*cert. denied* 479 U.S. 949 (1987), *citing Fisher v. Washington Metropolitan Transit Authority*, 690 F.2d 1133, 1142-1143 (4th Cir. 1982). Rather, Plaintiff must: 1) identify with particularity what the *supervisory official* failed to do which amounts to deliberate indifference; and 2) demonstrate a close causal connection between the identified deficiency and the ultimate injury. *Pennsylvania v. Porter*, 659 F.2d at 336. Plaintiff has failed to establish either element in his claim; therefore, judgment of dismissal in favor of defendant Doreen Williams is appropriate. Because there is no legal or factual basis to recover against defendant Williams, a dismissal pursuant to Rule 12 (b) (6) of the federal Rules of Civil Procedure is appropriate.

**WHEREFORE** for the foregoing reasons, defendant Doreen Williams respectfully requests that this Honorable Court enter an order for dismissal of plaintiff's complaint in her favor.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**


/s/ Ophelia M. Waters
Ophelia M. Waters, ID#3879
Deputy Attorney General
Department of Justice
State of Delaware
Carvel State Office Building, 6th Floor
820 N. French Street
Dated: December 22, 2006          (302) 577 – 8400

ophelia.waters@state.de.us

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2006, I electronically filed Defendant

Doreen Williams' *Memorandum of Points and Authorities in Support of Rule 12 (b) (6)*

*Motion To Dismiss* with the Clerk of Court using CM/ECF.  I hereby certify that on

December 22, 2006, I have mailed by United States Postal Service, the document to the

following non-registered participant:

      Paul Romano, Jr. Inmate
      SBI#00172653
      Plummer Community Correction Center
      38 Todds Lane
      Wilmington, DE  19801

      /s/ Ophelia M. Waters
      Ophelia M. Waters, ID#3879
      Deputy Attorney General
      Attorney for Defendant
      Carvel State Office Building
      820 N. French Street, 6th Floor
      Wilmington, DE 19801
      302-577-8400
      ophelia.waters@state.de.us

# EXHIBIT A

## Offender Status Sheet

Date: 12/15/2006

| | | | | |
|---|---|---|---|---|
| SBI #: | 00172853 | Name: PAUL F ROMANO | | Sex: M |
| Location(s): PCCC | | Level(s): 4 | Race: WHITE | DOB: 07/01/1964   Sex Offender: [ ] |
| AKA: | PAUL F ROMANO; PAUL ROMANO; PAUL F ROMANO | | | |
| Offender Type: | Sentenced | | Officer(s): Cardaci, Joanne (04) | |

### Level: 4

| Start Date: 04/13/2006 | MED: 03/29/2008 | STRD: 02/01/2008 | ADJ: 01/28/2008 | PED: | | | Statutory Days Earned: 57.00 | | | | |

| CASE#/ Court/ Type | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | Status/ Eff. Date | Length Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0511005411 | VN0511191301 | VOP (FORGERY 2ND) | Current | 1 | 11 | 17 | 04/13/2006 | 03/29/2008 | 02/01/2008 | 01/28/2008 | | |
| U7 | Richard R Cooch | STANDARD   04/13/2006 03/30/2006 | | | | | | | | | | |

### Special Conditions:

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| VN0511191301 | 4 | CRT1 | Other Conditions: | SENTENCED TO 2Y L5 SUSP. AFTER 14D FOR BAL. @ L4 CREST, UPON SUCCESSFUL COMPLETION OF L4 CREST, BAL. IS SUSP. FOR 16M L3 CREST AFTERCARE./CAR |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL ROMANO, JR.　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)　　C.A. No.06-573-JJF
　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Trial Jury Demanded
COUNSELOR NFN TOLSON,　　　　　)
et al,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　)

## AFFIDAVIT OF DOREEN WILLIAMS

I, Doreen Williams, having been duly sworn according to the law, do hereby depose and say the following:

1. I have been employed by the Delaware Department of Correction for the past 15 years. I worked for 9 years as a Correctional Officer. Currently, I hold the title of a Probation and Parole Officer II under the Bureau of Community Correction. On September 5, 2004, I was assigned to the Central Violation of Probation Unit (CVOP). I have held this position at all times relevant to the instant action.

2. My job duties and responsibilities include implementing the initial orientation of incoming offenders. There are three types of offenders who have violated the terms of their probation. The first type of offender that I supervise is the individual that is awaiting a placement in a work release program. A second type of offender is awaiting the completion of an investigation of a proposed host or home confinement. A Third type of offender is the offender who has been sentenced to the Crest program. Crest is a substance abuse treatment program.

3. I have reviewed Romano's complaint, and I disagree with the claims that he has been held in the custody of the Department of Correction in violation of a court order.

4. After reviewing all available information I have learned Paul Romano was serving a level 2 probation sentence that began November 5, 2005. On or around March 29, 2006, an Administrative Warrant was created by his previous Probation Officer, Kate Sweeney. He was being cited for violating 2 conditions of supervision. He was transferred to SVOP, Sussex Violation of Probation.

5. On April 13, 2006, he appeared in Superior Court New Castle County to answer to the Violation of Probation allegations before Judge Richard R. Cooch. He was found in violation and sentenced to 2 years at Level 5 suspended after serving 14 days for balance to be served at Level 4 CREST; upon successful completion of CREST, sentence suspended for 18 months at Level 3 CREST Aftercare. Hold at Level 3 until space available at Level 4 CREST.

6. After the hearing, he was transported back to SCCC around **00:00** p.m. on April 13, 2006 after court. He was transferred to CVOP on April 18, 2006 for placement in the CREST program.

7. The CREST program is a Corrections-based Residential Treatment Program. It is designed to provide the individual with an understanding of the behaviors that brought him into the corrections environment, and to introduce him/her to skills that can be used to live a life free of crime and drugs. The Program is divided into 3 phases. The first phase is here at CVOP, and it typically lasts for 75 days.

8. The next phase is at a work release unit where more programming is received for approximately 75 – 90 days. (This depends on the length of a sentence.) After that, a

portion of Work Release is done at the end of the Level 4/5 sentence.  The last phase is on probation.  There, the individual will report to a Probation Officer, typically level 3, once a week and also to a CREST Aftercare counselor 1 – 2 times per week.

9.  While in the program, Paul Romano received 2 Disciplinary write-ups.  The first was on June 23, 2006 for referring to a Senior Crest Counselor as a "Dyke Bitch".  He went before the MDT (Multi-Disciplinary Team), and by a vote of 3 – 0, he was sanctioned to a 2 week stay at SVOP, then back to the program.

10.  On August 3, 2006, Paul Romano signed out of the program.  This action is deemed as a disciplinary problem and was written up as such.  He appeared before the MDT on August 9, 2006 and was sanctioned to a 60 day stay at SVOP.

11.  He returned to CVOP and the program on October 16, 2006 and was then transferred to PCCC, Plummer House for Phase B of the CREST program.  He is currently serving his sentence there.

12.  I make these statements based upon my personal knowledge and information as the Probation/Parole Officer II.

Doreen Williams, Probation and Parole Officer II

SWORN TO AND SUBSCRIBED before me, this 22 day of December 2006.

_____
Notary

# EXHIBIT C

Date 12/21/06                 Client Location History          Prgm CJDCI11P

CPT: 00172653   DOC Name: ROMANO, PAUL, F            Race: W   Sex: M
_    04 11/21/2006   506   4   11   1   3   04/13/2006
_    06 10/16/2006   512   4   11   1   3   04/13/2006  11/21/2006   504
_    12 08/14/2006   506   4   11   1   3   04/13/2006  10/16/2006   506
_    06 07/21/2006   512   4   11   1   3   04/13/2006  08/14/2006   512
_    12 06/28/2006   506   4   11   1   3   04/13/2006  07/21/2006   506
_    06 04/18/2006   512   4   11   1   3   04/13/2006  06/28/2006   512
_    12 04/13/2006   110   4   11   1   3   04/13/2006  04/18/2006   506
_    12 04/13/2006   120   5   11   1   1   03/31/2006  04/13/2006   110
Selections: I = Inquiry  P = Print                  ** MORE DATA **

Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
        HELP  MENU  QUIT  --    --    --    --    --   ESCP  --    --    --

# EXHIBIT D

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1  OF  7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: | |
| | 36 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:   INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: *Carl W. Howard* | | |
| EFFECTIVE DATE: *Revised* 5/15/98 | | |

I.    AUTHORITY:  DOC Policy 4.4

II.   PURPOSE:

To establish an Inmate Grievance Procedure designed to
reduce tension in correctional facilities and to effectively
resolve the vast majority of cases within our system.  Every
inmate will be provided a timely, effective means of having
issues brought to the attention of those who can offer
administrative remedies before court petitions can be filed.
NOTE:  Inmates are encouraged to seek their counselors'
advice on how to best pursue a response to concerns before
prematurely filing a grievance under the guidelines that
follow.

III.  APPLICABILITY:

All BOP employees, volunteers, persons or organizations
conducting business with the BOP: all inmates under BOP
custody or supervision.

IV.   DEFINITIONS:

A.    Bureau Grievance Officer (BGO):  A BOP employee who
      reviews and mediates appeal of the Warden's/Warden's
      Designee decision.

B.    Emergency Grievance:  An issue that concerns matters
      which under regular time limits would subject the
      inmate to a substantial risk of personal, physical or
      psychological harm.

C.    Grievance:  A written complaint concerning the
      substance or application of a policy or practice; any
      action toward an inmate by staff or other inmates; any
      condition or incident within the institution that
      affects an inmate.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 2  OF  7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

> Health Services Administrator
> Director of Nursing
> Charge Nurse
> Chief Medical Officer
> Medical Records Clerk
> Mental Health Counselor
> Chief Dental Officer
> Dental Assistant

## V.  PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP.  Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.4 | PAGE:<br>4 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee.  Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit.  Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months.  Staff RGC members serve at the discretion of the Warden/Warden's Designee.  One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps.  The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584.  The grievant must complete this form within 7 calendar days following the incident and forward to the IGC.  The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt.  Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance.  Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance.  Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants.  The RGC shall ask any question it feels relevant to the issue.  If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work.  All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation.  The IGC forwards the RGC recommendation to the Warden/Warden's Designee.  The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution.  If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance.  If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt.  Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance.  At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended.  The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary.  The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 6  OF  7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

recommendation.  Decisions by the Bureau Chief of Prisons are
final and not open to grievant interpretation.  The Bureau Chief
of Prisons will return his final decision and the grievance file
to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or
psychological inmate injury shall be addressed immediately by the
Warden/Warden's Designee.  A copy of the grievance shall be sent
to the IGC upon receipt by the Warden/Warden's Designee.  And the
Warden/Warden's Designee shall respond within one calendar day.
Grievant appeals of the Warden/Warden's Designee decision will be
decided by the Bureau Chief of Prisons within one calendar day
upon receipt of the emergency appeal.  NOTE: If the
Warden/Warden's Designee should determine that the grievance does
not meet the emergency criteria, the grievance shall be returned
to the inmate for processing through the normal IGP process
steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance
Chairperson (IGC) at the respective institution on Form #585.
If, by chance, an inmate sends a grievance directly to the
medical services contractual staff, they are to forward it first
to the IGC who will log it in the institution's grievance log and
then return it to the medical services contractual staff for
action.

The appropriate medical staff will review the grievance and
denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal
resolution with the inmate, upon discussion over the treatment
defined on the Medical Log Form.  If the Medical Grievance is
resolved the inmate acknowledges this by his signature on Form
#585 Informal Resolution.  This signed form is forwarded to the
IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical
Grievance Committee hearing which will not include any medical
services contractual staff previously involved in the informal
resolution process.  The IGC and the inmate must be present at
this hearing.

Resolution closes the case; failure to resolve the case results
in the inmate completing the MGC Appeal Statement section of Form
#585.  Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 7 OF 7 |
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO).  The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

### Universal Grievance:

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

### Institutional Transfer:

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded.  If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II.  The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review.  If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review.  Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

### Appeals:

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal.  This form must be given to the IGC who is responsible for tracking the status of each grievance.  The IGC will forward the appeal and grievance file to the BGO.  Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level.  NOTE:  The Bureau Chief of Prisons decisions are final and not appealable.


Attachments

# EXHIBIT E



Civigenics – Delaware Key/Crest/Aftercare Programs

## Complaint Resolution Form

CiviGenics, Inc.

| PAUL Romano | Please Print out Name of Client who will sign below: |
|---|---|

The policy of the Civigenics is to attempt to resolve all client grievances/complaints in a procedure that corresponds with the Department of Corrections Grievance Procedures. Please recognize that if an offender chooses to submit formal grievances per the DOC procedure, this policy takes precedence over the procedure noted below and any result will be determined by the Warden or his delegate (DOC Grievance Officer).

If the offender chooses to use the Civigenics procedure in handling inmate complaints then this is noted below:

All clients are permitted and encouraged to write to their Primary Counselor to address their concerns that are not resolved through the Therapeutic Community process.

IN THE CASE OF UNRESOLVED ISSUES, PROGRAM CLIENTS MAY FILE A COMPLAINT FORM WHICH WILL BE REVIEWED:

1. A complaint form or letter is completed and submitted to the Primary Counselor for review/resolution.

2. If the complaint is not resolved to the client's satisfaction, the complaint can be reviewed by the Clinical Supervisor.

3. Upon review and response by the Clinical Supervisor and the client still does not believe that issue is resolved, the complaint can be forwarded to the Program Director.

4. If a resolution is not met at this level, the complaint will be reviewed at the Office of the State Director for review and resolution. The Warden of the Institution will be notified of the client's complaint and the State Director's ruling. Address of the Civigenics State Director is as follows – Statewide Director, Civigenics, MCCC, 300 Water Street, Dover, DE 19904.

5. Final ruling of complaints will be in coordination of the Region 1 Director. The State Office will notify the Regional Director of any/all complaints considered unresolved.

| Client Signature | Date | Witness | Date |
|---|---|---|---|
|  | 4/20/06 | C. Washington Castor | 4/20/06 |