IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL ROMANO, JR.,                    :
                                     :
          Plaintiff,                 :
                                     :
     v.                              : Civil Action No. 06-573-JJF
                                     :
COUNSELOR NFN TOLSON,                :
NFN WILLIAMS, CLINICAL               :
SUPERVISOR REGGIE GILBERT,           :
COUNSELOR NFN WASHINGTON,            :
and SENIOR COUNSELOR NFN             :
HICKS,                               :
                                     :
          Defendants.                :

---

Paul Romano, Jr., Pro se Plaintiff, Plummer Community Correction
Center, Wilmington, Delaware.

Ophelia Michelle Waters, Esquire, Deputy Attorney General,
Delaware Department of Justice.  Attorney for Defendant Doreen
Williams.

Carol J. Antoff, Esquire, Newark, Delaware.  Attorney for
Defendants Lisa Tolson, Reginald "Reggie" Gilbert, Curtis
Washington, and Chelsea Hicks.

---

**MEMORANDUM OPINION**

June 25, 2007
Wilmington, Delaware

**Farnan, District Judge**

Presently before the Court are Motions To Dismiss filed by Defendants Lisa Tolson ("Tolson"), Reginald "Reggie" Gilbert ("Gilbert"), Curtis Washington ("Washington"), and Chelsea Hicks ("Hicks") (D.I. 17) and State Defendant Doreen Williams ("Williams") (D.I. 18) and the response of Plaintiff, Paul Romano, Jr. ("Plaintiff") (D.I. 21).  For the reasons set forth below, the Court will grant the Motions To Dismiss.  (D.I. 17, 18.)

## I.  BACKGROUND

Plaintiff is an inmate housed at the Plummer Community Correction Center ("PCCC").  He alleges that on April 13, 2006, he was sentenced to two years at Level V, suspended after fourteen days to Level III upon successful completion of the Crest program[1], with eighteen months at Level II aftercare. (D.I. 2.)  Plaintiff alleges that on Easter weekend he was not released, but was held at SVOP (i.e., Sussex Violation of Probation Center).  Plaintiff alleges he wrote several letters complaining that he was being held in violation of a court order, but received no responses.  On April 19, 2006, Plaintiff was sent

_____

[1]The Crest program is the second part of a three-step drug treatment program.  KEY is the first phase of the program and Aftercare is the third phase.  The program is administered by Civigenics under contract with the State of Delaware.

to the CVOP (i.e., Central Violation of Probation Center) and an attempt was made to enter him in the Civigenics program.  He ultimately was enrolled in the program.

Two days after his enrollment, Plaintiff asked Defendant Washington for help in obtaining his sentencing order, but Washington "never got back to [him]".  On April 23, 2006, Plaintiff presented the same question to Defendant Tolson who indicated she would "see what she could do" but she never "got back to [Plaintiff]".  Washington ultimately provided Plaintiff with a copy of his sentencing work sheet.  The work sheet made reference to a Level IV Crest program and Washington indicated he would ask Defendant Gilbert, his supervisor, about the matter. Plaintiff alleges there was no response from Gilbert.

On April 30, 2006, Washington scheduled an appointment for Plaintiff with Defendant Williams, a probation and parole officer.  He alleges that during the meeting he saw the computer screen and it indicated he was released to Level III.  Plaintiff alleges Williams untruthfully told him his Level III sentence was reversed and his Level II probation was revoked.  Plaintiff alleges that was "stuck," so he attended the Civigenics program for twelve weeks to await the Crest Level IV program at PCCC.

Plaintiff alleges that on June 13, 2006, he passed the last test for release to "the streets" and on the same day, he was

-2-

given a basic rules infraction. Plaintiff received sanctions of public apology, two hours community service, and one week growth morning and evening meetings. He also received feedback on the infraction from his class. At the end of the class Defendant Hicks made comments to Plaintiff which Plaintiff found inappropriate. During the same time, Defendant Gilbert told Plaintiff to pack his things and Plaintiff was sent to "the hole" for two weeks.

Plaintiff eventually returned to the Civigenics program. He alleges he was out of the program for a total of fifty-three days. Plaintiff signed out of the Civigenics program on August 7, 2006, which apparently warrants issuance of a disciplinary write-up. Plaintiff appeared before the Multi-Disciplinary Team ("MDT") and was told he had the option of entering Civigenics for sixty days prior to placement of his name on a list for PCCC or he would receive a sixty day sanction for signing out. Plaintiff alleges he told the MDT this violated his right to due process and he planned to file a grievance.

Plaintiff seeks a return to Level III for sixty days to allow him to regain lost possessions and other articles and legal documents. He also asks that this case be remanded to the Delaware Superior Court to allow him an opportunity to "explain

everything and request modification or other legal relief."
(D.I. 2, at 4.)

Defendants Tolson, Gilbert, Washington, and Hicks are
employees of Civigenics, Inc., and they move for dismissal on the
bases that Plaintiff did not exhaust his administrative remedies,
and they were not sufficiently involved in the alleged
constitutional deprivations to trigger liability under 42 U.S.C.
§ 1983.  Defendant Williams moves for dismissal on the bases that
Plaintiff failed to exhaust his administrative remedies, she has
sovereign immunity in her official capacity, and she lacks
sufficient personal involvement to invoke liability under § 1983.
Plaintiff responds that he continues to be wrongfully
incarcerated and, that although he filed a grievance, he received
no response.

## II.  DISCUSSION

### A.  Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a complaint
for failure to state a claim upon which relief can be granted.
Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is
to test the sufficiency of a complaint, not to resolve disputed
facts or decide the merits of the case.  Kost v. Kozakiewicz, 1
F.3d 176, 183 (3d Cir. 1993).  To that end, the Court assumes
that all factual allegations in Plaintiff's pleading are true,

-4-

and draws all reasonable factual inferences in the light most
favorable to Plaintiff.  Amiot v. Kemper Ins. Co., 122 Fed. Appx.
577, 579 (3d Cir. 2004).  However, the Court should reject
"unsupported allegations," "bald assertions," or "legal
conclusions."  Id.  A Rule 12(b)(6) motion should be granted to
dismiss a pro se complaint only when "it appears beyond doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief."  Estelle v. Gamble, 429
U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46
(1957)).

        Williams filed an affidavit in support of her Motion To
Dismiss.  All Defendants filed documents regarding exhaustion of
administrative remedies.  The Federal Rules of Civil Procedure
provide that when a motion to dismiss is filed pursuant to Rule
12(b)(6) and matters outside the pleadings are presented to and
not excluded by the Court, the matter shall be treated as one for
summary judgment and disposed of as provided in Fed. R. Civ. P.
56.  Fed. R. Civ. P. 12(b).  The Court will not consider the
affidavit submitted by Williams and will treat her motion as a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b).  However,
authentic records documents relating to the issue of exhaustion,
may be considered by this Court without converting the motion to
a motion for summary judgment.  See Spruill v. Gillis, 372 F.3d
218, 230 (3d Cir. 2004).

### B.  Administrative Remedies

All moving Defendants argue that Plaintiff did not exhaust his administrative remedies as is required under 42 U.S.C. § 1997e(a) and, therefore, the Complaint must be dismissed.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues."  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available.  See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met).  If prison authorities

-6-

thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. <u>Brown v. Croak</u>, 312 F.3d 109, 112-13 (3d Cir. 2002). Additionally, "this Court has held that a § 1983 prisoner complaint should not be dismissed for failure to exhaust administrative remedies when the record indicates that plaintiff filed a grievance that has been completely ignored by prison authorities beyond the time allowed for responding to grievances under the grievance procedure." <u>Woulard v. Food Service</u>, 294 F.Supp.2d 596, 602 (D. Del. 2003) (citations omitted).

Delaware Department of Correction ("DOC") administrative procedures provide for a multi-tiered grievance and appeal process. DOC Policy 4.4 (revised May 15, 1998). First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden; and third, the Bureau Grievance Officer conducts the final level of review. <u>Id</u>. Civigenics also has a grievance procedure to address inmate complaints concerning treatment programs. Its procedure is to attempt to resolve all grievances/complaints in a procedure that corresponds with the DOC grievance procedures. (D.I. 17, Ex. A.) An inmate may chose

-7-

to submit a formal grievance using the DOC procedure.  If he or she does, the DOC policy takes precedence over the Civigenics procedure.  Id.

All moving Defendants argue that Plaintiff did not follow the grievance procedure.  More particularly, they contend that he complained to various counselors but made no other attempt to have his complaints resolved.  They further argue that Plaintiff did not grieve his conditions of confinement through the proper channels, as required, for the alleged violations for which he now complains.  Plaintiff responded by filing a copy of a grievance he sent to the CVOP Warden, "without no answer".  (D.I. 21, Ex.)  It is unclear if the grievance is dated "9/2/06" or "8/2/06".  Regardless, the incident date appears to be "8/9." Id.  Plaintiff also contends that when he asked for a grievance form at CVOP he was told "they run out had to make more copies etc."  (D.I. 21.)

The burden of demonstrating exhaustion rests with Plaintiff. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000).  A review of the record reveals that Plaintiff has failed to demonstrate that he has exhausted his claims.  To the extent that Plaintiff claims that he sent a grievance to the Warden at CVOP, he did not initiate proper exhaustion under the DOC Prison Grievance Procedure.  Plaintiff was required to file a formal grievance within seven days with the Inmate Grievance Chair, not with the

-8-

warden.  The warden does not become involved in the grievance

procedure until informal resolution attempts fail and after the

Grievance Resolution Committee makes a finding and presents its

recommendation to the Warden or his designee.  Additionally, the

Complaint contains allegations for actions taken prior to August

2006 and directed towards Defendants Washington, Tolson,

Williams, Gilbert, and Harris.  Nothing indicates Plaintiff filed

a grievance regarding their alleged actions during that time

period.  Plaintiff's failure to properly exhaust is fatal to his

claims.  "[I]t is beyond the power of this court. . .to excuse

compliance with the exhaustion requirement." Nyhuis, 204 F.3d at

73.  Accordingly, the Court will grant the Motions To Dismiss on

the basis of failure to exhaust administrative remedies.

**C.  Eleventh Amendment Immunity**

Williams moves for dismissal of the claims raised against

her in her official capacity by reason of Eleventh Amendment

immunity.  The Eleventh Amendment bars suits against states, see

Bolden v. SEPTA, 953 F.2d 807, 813 (3d Cir. 1991), and claims

made against state officials in their official capacities are

treated as claims made against the state itself.  Will v.

Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Based

upon the foregoing, the Court will grant the Motion To Dismiss

the claims against Williams in her official capacity.

**D.  Personal Involvement/Failure To State A Claim**

All moving Defendants argue that the Complaint fails to allege sufficient personal involvement to invoke liability under § 1983.  When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978).  Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff."  Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005).

The claims against Defendants do not rise to the level of a constitutional violation.  Plaintiff alleges he asked for Defendant Tolson's assistance in obtaining his sentencing order, but she failed to provide it to him.  This is not a constitutional violation.  With regard to Defendant Washington, he complains that sought his assistance in obtaining a copy of the sentencing order, that Washington provided him a copy of the sentencing work sheet, told Plaintiff he would speak to his supervisor, Defendant Gilbert, and scheduled an appointment for Plaintiff with Defendant Williams.  Again, there is no constitutional violation, and moreover, the allegations suggest that Gilbert attempted to help Plaintiff.  With regard to Defendant Hicks, Plaintiff alleges she made unwarranted and inappropriate comments to him.  These allegations are frivolous. Plaintiff alleges Defendant Williams lied to him when she told him his Level III sentence had been reversed and his Level II probation revoked.  The allegations are troubling, but again, do not rise to the level of a constitutional violation.  Finally, Plaintiff alleges Defendant Gilbert told him to pack his things and placed him in "the hole" where Plaintiff remained for two weeks.  This short time in "the hole" did not violate Plaintiff's rights under the Due Process Clause.  State created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and

-11-

significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706 (3d Cir. 1997) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).

Finally, Plaintiff asks that this case be remanded to the Delaware Superior Court to allow him an opportunity to "explain everything and request modification or other legal relief." To the extent that Plaintiff attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus, not through a § 1983 action. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973). Based upon the foregoing, the Court will grant the Motions To Dismiss inasmuch as the Complaint fails to allege the requisite personal involvement to impose liability under § 1983.

## III. CONCLUSION

The Court will grant Defendants' Motions To Dismiss. (D.I. 17, 18.) An appropriate Order will be entered.